

1 | Michael Sanderson Lawson, SBN: 48172
City Attorney
2 | CITY OF EAST PALO ALTO
2415 University Avenue
3 | East Palo Alto, CA 94303
Telephone: (650) 853-5921
4 | Facsimile: (650) 853-5923
mlawson@cityofepa.org
5 |
Benjamin P. Fay, SBN: 178856
6 | Rick W. Jarvis, SBN: 154479
JARVIS, FAY & DOPORTO, LLP
7 | 475 - 14th Street, Suite 260
Oakland, CA 94612
8 | Telephone:    (510) 238-1400
Facsimile:    (510) 238-1404
9 | bfay@jarvisfay.com
rjarvis@jarvisfay.com
10 |
Attorneys for Respondent
11 | CITY OF EAST PALO ALTO

12 |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

FILED

Ĺ ͟ling

2007 JUL 12 AM 10: 18

ADR

16 | PALO MOBILE ESTATES ASSOCIATES, a ) CASE NO: C07-03601 EDL
California limited partnership, )
17 | )
Petitioner, )
18 | ) **NOTICE OF REMOVAL OF ACTION**
v. ) **UNDER 28 U.S.C. § 1441(b)**
19 | ) **[FEDERAL QUESTION]**
CITY OF EAST PALO ALTO, a municipal )
20 | corporation; DOES 1 through 10, inclusive, )
)
21 | Respondents. )
)

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE THAT respondent City of East Palo Alto hereby removes to this Court the state court action described below.

1.    On June 12, 2007, an action was commenced in the Superior Court of the State of California in and for the County of San Mateo, entitled *Palo Mobile Estates Associates v. City of East*

1

1  *Palo Alto, et al.,* as case number CIV 436680.  The Verified Complaint for Declaratory Relief, Injunctive

2  Relief and Inverse Condemnation is attached hereto as Exhibit "A."

3      2.      The date upon which defendant City of East Palo Alto received a copy of said complaint

4  was June 13, 2007, when defendant was served with a copy of the summons and complaint which was

5  filed in the County of San Mateo.  A copy of the summons is attached hereto as Exhibit "B".

6      3.      This action is a civil action of which this Court has original jurisdiction under 28 U.S.C.

7  section 1331, and is one which may be removed to this Court by defendant pursuant to the provisions of

8  28 U.S.C. section 1441(b) in that the Third Cause of Action arises under the Fifth and Fourteenth

9  Amendments of the United States Constitution, asserting a taking of the plaintiffs' property for a non-

10  public purpose and without just compensation.  The remaining causes of action are not by themselves

11  removable in that they do not allege any claims which arise under federal law, but the entire case is

12  removable under 28 U.S.C. section 1441(c).

13

14  Dated: July 12, 2007                    JARVIS, FAY & DOPORTO, LLP

15

16                                         By:

17                                             Benjamin P. Fay
                                              Attorneys for Respondent
                                              CITY OF EAST PALO ALTO
18

19  J:\Clients\103 [E. Palo Alto]\010 (Palo Mobile Estates Complaint)\Plead\Notice of Removal to Federal Court.wpd

20

21

22

23

24

25

26

27

28

Notice of Removal of Action Under 28 U.S.C. § 1441(b) [Federal Question]

**EXHIBIT  A**

| | |
|---|---|
| 1 | RICHARD H. CLOSE (Bar No. 50298)<br>THOMAS W. CASPARIAN (Bar No. 169763) |
| 2 | YEN N. NGUYEN (Bar No. 253880)<br>GILCHRIST & RUTTER |
| 3 | Professional Corporation<br>Wilshire Palisades Building |
| 4 | 1299 Ocean Avenue, Suite 900<br>Santa Monica, California 90401-1000 |
| 5 | Telephone: (310) 393-4000<br>Facsimile: (310) 394-4700 |
| 6 | |
| 7 | Attorneys for Plaintiff Palo Mobile Estates<br>Associates |

ENDORSED FILED
SAN MATEO COUNTY

JUN 1 2 2007

Clerk of the Superior Court
A. De Leon
By _____ DEPUTY CLERK

8      SUPERIOR COURT OF THE STATE OF CALIFORNIA

9      FOR THE COUNTY OF SAN MATEO

10

11     PALO MOBILE ESTATES ASSOCIATES, a       CASE NO.        CIV 463686
       California limited partnership,

12
                   Plaintiff.
13                                             VERIFIED COMPLAINT FOR
                   vs.                         DECLARATORY RELIEF, INJUNCTIVE
14                                             RELIEF AND INVERSE CONDEMNATION
       CITY OF EAST PALO ALTO, a municipal
15     corporation; DOES 1 through 10, inclusive,

16                 Defendants.

17
               Plaintiff Palo Mobile Estates Associates ("PME") by this complaint ("Complaint") hereby
18
       alleges as follows:
19
                                              THE PARTIES
20
               1.      PME is a California limited partnership duly authorized and existing under and by
21
       virtue of the laws of the State of California.
22
               2.      PME is informed and believes, and thereon alleges, that defendant City of East Palo
23
       Alto ("City") is a municipal corporation organized and existing under the laws of the State of
24
       California.
25
               3.      The true names and capacities, whether individual, corporate, associate,
26
       governmental or otherwise, of defendants Does 1-10, inclusive, are unknown to PME at this time
27
       and PME therefore sues said defendants by such fictitious names. Leave of Court will be
28

[ynn:ynn/145590_3.DOC/052907/4604.0011]

GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 · FAX (310) 394-4700

**1**  requested to amend this Complaint to show their true names and capacities when the same have

**2**  been ascertained. City and Does 1-50, inclusive, are sometimes hereinafter collectively referred to

**3**  as "Defendants." PME is further informed and believes, and thereon alleges that Defendants, and

**4**  each of them, in doing the things hereinafter alleged were acting pursuant to the course and scope

**5**  of their authority as agents, servants, and employees of one another and with the permission and

**6**  consent of their co-defendants.

**7**      4.    PME is informed and believes, and based thereon alleges, that Defendants, and

**8**  each of them, conspired and acted in concert with each other with respect to the events and

**9**  happenings referred to herein which proximately caused the damages hereinafter alleged.

**10**  VENUE AND JURISDICTION

**11**      5.    This Court has personal jurisdiction over Defendants as they are, and at all relevant

**12**  times hereinafter mentioned were, political subdivisions, cities, political and administrative

**13**  bodies, domiciliaries, and/or residents of the State of California.

**14**      6.    Venue is properly placed in the County of San Mateo, State of California for the

**15**  following reasons, among others: (a) the wrongful conduct, acts and omissions of Defendants

**16**  hereinafter alleged occurred and took place in the County of San Mateo, State of California; (b)

**17**  the effects of such wrongful conduct and the damages resulting therefrom to PME have occurred

**18**  in the County of San Mateo, State of California; (c) the Defendants, their employees and

**19**  representatives and most of the witnesses to the conduct alleged herein reside in or around the

**20**  County of San Mateo or have their principal places of business and conduct their businesses

**21**  within the County of San Mateo, State of California.

**22**      7.    On May 1, 2007, PME filed a claim with City, pursuant to Government Code

**23**  section 810 *et seq.*, otherwise known as the California Tort Claims Act.

**24**  GENERAL FACTUAL ALLEGATIONS

**25**      8.    PME is the owner of Palo Mobile Estates (the "Park"), a mobilehome park located

**26**  in the City of East Palo Alto. PME was and is seeking to convert the Park to resident ownership

**27**  pursuant to California Government Code section 66427.5. Such a conversion would mean that the

**28**  residents of the Park would own their own real estate units, as well as an undivided interest in the

[JEL:jel/145590_3.DOC/110306/4541.013]       -2-

COMPLAINT

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1   common areas, as opposed to a rental-only facility owned by Plaintiff.  When a mobilehome park

2   is converted to condominium-style ownership, each lot in the mobilehome park becomes

3   separately transferable pursuant to State law and subject to applicable covenants, conditions, and

4   restrictions.  State law provides for its own form of rent control applicable in a resident-owned

5   park and preempts any otherwise applicable local rent control.

6       9.      California has adopted a comprehensive statutory scheme governing conversion of

7   mobilehome parks from rental facilities to resident-owned, or condominium-style, parks.  The

8   agency principally responsible for administering that statutory scheme is the California

9   Department of Real Estate.  Under California law, the authority of local bodies such as City is

10  limited to consideration of an application for a tentative tract map pursuant to Government Code

11  section 66427.5 (within the Subdivision Map Act, Government Code section 66410 *et seq.*).  Such

12  a map has the effect of subdividing the single parcel into separately transferable real estate units,

13  as well as interest in undivided common areas.  No construction or physical development at the

14  mobilehome park is contemplated or necessary.  Rather, the subdivision is on paper only.

15      10.     A local agency's, such as City's, consideration of such an application is governed

16  by Government Code section 66427.5, which provides specific and detailed requirements for

17  conversions to resident ownership and limits the local government's review of the application to

18  the question of whether the requirements of Government Code section 66427.5 have been

19  satisfied.  After the local government approves the map subdivision, the California Department of

20  Real Estate regulates the marketing and sale of the individual units in the mobilehome park.

21      11.     Pursuant to this statutory framework, PME has submitted an application for a

22  tentative tract map to subdivide the Park for condominium purposes ("Application").  The

23  Application does not contemplate any new building or development; it merely subdivides the

24  property lines to allow for resident ownership of lots in the Park.

25      12.     In or around March 2007, PME became aware that City was planning a vote

26  regarding a proposed interim urgency ordinance, allegedly pursuant to Government Code section

27  65858, to impose a forty-five (45) day moratorium on approving applications for conversions of

28  mobilehome parks to resident ownership within the City.

[JEL:jel/145590_3.DOC/110306/4541.013]                    -3-

GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

**1**  13.   In a letter dated March 9, 2007, PME advised City that the proposed moratorium

**2**  was illegal in light of controlling state statues and appellate court opinions. PME advised City that

**3**  the proposed moratorium was not supported by adequate legislative findings, as required under

**4**  Government Code section 65858, and was therefore an improper use of City's authority to pass

**5**  interim urgency measures. PME further informed City that it was preempted from legislating in

**6**  the area of mobilehome park conversions from rental-only facilities to resident ownership. A true

**7**  and correct copy of PME's March 9, 2007 letter is attached hereto as Exhibit "A."

**8**  14.   Nevertheless, during a City Counsel hearing on March 13, 2007, City, acting

**9**  through its City Council, enacted Ordinance No. 299 imposing a temporary forty-five (45) day

**10**  moratorium on the conversion of mobilehome parks to resident ownership in the City of East Palo

**11**  Alto ("Original Moratorium"). A true and correct copy of Ordinance No. 299 is attached hereto as

**12**  Exhibit "B."

**13**  15.   In a letter dated April 13, 2007, PME again advised City that the Original

**14**  Moratorium was an improper use of City's authority to pass interim urgency measures and was

**15**  violative of California law. PME informed City that the conversion of a mobilehome park from a

**16**  leasehold to resident ownership did not constitute a change of use allowing for the imposition of

**17**  an interim ordinance under Section 65858(a) prohibiting its use. PME reiterated that, even if the

**18**  conversions to resident ownership constituted a change of use, which it did not, Defendants

**19**  abused their discretion by a enacting the Original Moratorium without meeting the mandatory

**20**  prerequisites set forth in Government Code section 65858(c), *i.e.,* making adequate legislative

**21**  findings that the conversion of mobilehome parks to resident ownership constitute "a current and

**22**  immediate threat to the public health, safety, or welfare. . .." Cal. Gov't Code § 65858(c). Lastly,

**23**  PME noted City was preempted entirely from legislating in the area of mobilehome park

**24**  conversions from rental-only facilities to resident ownership. PME advised City that, for those

**25**  same reasons, an extension of the Original Moratorium would also be violative of the law. A true

**26**  and correct copy of PME's April 13, 2007 letter is attached hereto as Exhibit "C."

**27**  16.   On April 24, 2007, the City Council held a hearing to consider, among other things,

**28**  extending the Original Moratorium. Representatives of PME were present at the April 24, 2007

[JEL:jel/145590_3.DOC/110306/4541.013]          -4-

1    hearing and again attempted to advise City that the Original Moratorium, and its extension, was

2    violative of the law. However, City disregarded PME's objections and adopted Ordinance No.

3    300 extending the Original Moratorium for a period of three (3) months ("Extended Moratorium,"

4    together with Original Moratorium, "Moratorium"). Specifically Section 2 of Ordinance No. 300

5    states, "[d]uring the period this ordinance remains in effect [from April 27, 2007 to and including

6    July 27, 2007], no permit or approval of any entitlement application shall be granted allowing the

7    conversion of a mobilehome park to resident ownership within the city of East Palo Alto."

8    Furthermore, Ordinance No. 300 states the purpose of the Moratorium is "to provide staff and

9    advisory bodies sufficient time to study the issues and make recommendations on whether and

10    how to regulate mobilehome park conversions. . .." Such regulation is expressly prohibited by

11    California law. A true and correct copy of Ordinance No. 300 is attached hereto as Exhibit "D."

12          17.       During the April 24, 2007 hearing, members of the City Council made clear their

13    desire to stop mobilehome park conversions to resident ownership, despite clear State statutory

14    authority enabling and encouraging owner-initiated conversions. It is evident both from the tenor

15    of the April 24, 2007 hearing and the alleged "findings" in the Extended Moratorium that City, in

16    addition to improperly including mobilehomes in its affordable housing calculus, has concluded

17    that affordable rental opportunities allegedly provided by mobilehome parks as rental-only

18    facilities should be promoted over affordable homeownership opportunities available after

19    mobilehome park conversions to resident ownership, despite State statutory determinations

20    otherwise.

21          18.       PME is informed and believes and thereupon alleges that upon the expiration of the

22    Moratorium, City may attempt to further extend the Moratorium for a period of one (1) year

23    pursuant to Government Code section 65858(a).

24          19.       As a result of City's illegal acts, PME has been damaged for a sum in excess of

25    $14,625,000.00, which sum represents, among other things, the loss in the fair market value of

26    PME's mobilehome park and loss of income caused by its inability to convert its Park to resident

27    ownership.

28

[JEL:jel/145590_3.DOC/110306/4541.013]         -5-

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1    20.    In order to expedite resolution on the validity of the Moratorium and pursuant to

2    the Supreme Court's decision in *Kavanau v. Santa Monica Rent Control Board*, Plaintiff has also

3    filed a separate Verified Petition for Writ of Mandate ("Petition") concurrently with this

4    Complaint seeking a writ of mandating directing Defendants to vacate Ordinance No. 300 and

5    resume approval of subdivision applications for conversions of mobilehome parks to resident

6    ownership within City. 16 Cal. 4th 761, 779 (1997) ("[I]f a property owner brings a timely action

7    to set aside or void a regulation, he may *but need not* join a claim for damages. Instead, he may

8    bring a damages claim separately after successfully challenging the regulation.").

9                          FIRST CAUSE OF ACTION

10                (For Declaratory Relief Against City and Does 1 – 10)

11    21.    PME re-alleges and incorporates herein by this reference Paragraphs 1 through 20,

12    inclusive, as if set forth in full herein.

13    22.    An actual controversy has arisen and now exists between PME and Defendants, and

14    each of them, regarding their respective rights, duties, and obligations under Government Code

15    sections 65858 and 66427.5, California law, and the Moratorium in that PME contends

16    Defendants acted illegally in enacting the Moratorium for the following reasons: (i) even if City

17    did have authority to legislate mobilehome park conversions, which it did not, Government Code

18    section 65858 does not allow for the imposition of an interim ordinance to prohibit a current use;

19    (ii) irrespective, Defendants did not comply with the mandatory prerequisites set forth in

20    Government Code section 65858(c); and, (iii) Defendants deliberately ignored the fact that local

21    authority concerning mobilehome park conversions to resident ownership is limited to confirming

22    that applications for conversion comply with the requirements contained in Government Code

23    section 66427.5, whereas Defendants dispute these contentions.

24    23.    PME desires a judicial determination of the respective rights and duties of it and of

25    Defendants with respect to Government Code sections 65858 and 66427.5, California law, and the

26    Moratorium. In particular, PME desires a declaration that: (i) compliance with Government Code

27    sections 65858 and 66427.5 and California law is mandatory; (ii) even if City did have authority

28    to legislate mobilehome park conversions, which it did not, Government Code section 65858 does

[JEL:jel/145590_3.DOC/110306/4541.013]                    -6-

GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
LAW OFFICES
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1    not allow for the imposition of an interim ordinance to prohibit a current use; (iii) irrespective, in
2    enacting the Moratorium, PME did not comply with the mandatory prerequisites set forth in
3    Section 65858(c) of the Government Code; (iv) in enacting the Moratorium, Defendants
4    improperly attempted to legislate in an area exclusively subject to State control; and, (v) said
5    failure to comply with Government Code sections 65858 and 66427.5 and California law thereby
6    renders the Moratorium invalid;

7        24.    Such a declaration is necessary and appropriate at this time in order that PME may
8    ascertain its rights and duties with respect to Government Code sections 65858 and 66427.5,
9    California law, and the Moratorium.

10                            SECOND CAUSE OF ACTION

11        (For a Preliminary Injunction and a Permanent Injunction Against City and Does 1 – 10)

12        25.    PME re-alleges and incorporates herein by this reference Paragraphs 1 through 24,
13    inclusive, as if set forth in full herein.

14        26.    PME seeks a preliminary and permanent injunction to enjoin Defendants from
15    enforcing the Moratorium.

16        27.    PME has demanded that Defendants stop their wrongful conduct described above
17    and to vacate Ordinance No. 300. Defendants, and each of them, have refused to comply with
18    PME's demands and have continued to uphold and enforce the Moratorium, notwithstanding
19    PME's request that City cease enforcing the Moratorium and immediately vacate the same.

20        28.    Unless and until enjoined and restrained by this Court, Defendants' conduct has
21    caused and will continue to cause PME to suffer grave and irreparable injury. PME's lawful use
22    of its property has been unlawfully stymied by the Moratorium. Among other things, PME is
23    unable to convert its Park to residential ownership, thereby facing loss in the fair market value of
24    its Park and loss of income. PME's injury is continuous and ongoing.

25        29.    PME is likely to prevail on the merits of this action as Defendants clearly acted
26    without legal authority in enacting the Moratorium in that: (i) even if City did have authority to
27    legislate mobilehome park conversions, which it did not, Government Code section 65858 does
28    not allow for the imposition of an interim ordinance to prohibit a current use; (ii) irrespective,

[JEL:jel/145590_3.DOC/110306/4541.013]                    -7-

                                                                                    COMPLAINT

**1**  Defendants did not comply with the mandatory prerequisites set forth in Government Code section

**2**  65858(c); and, (iii) Defendants deliberately ignored the fact that local authority concerning

**3**  mobilehome park conversions to resident ownership is limited to confirming that applications for

**4**  conversion comply with the requirements contained in Government Code section 66427.5.

**5**      30.    PME has no plain, speedy, or adequate remedy at law, and injunctive relief is

**6**  authorized by California Code of Civil Procedure section 526.

**7**  THIRD CAUSE OF ACTION

**8**  (For Inverse Condemnation Against City and Does 1 – 10)

**9**      31.    PME re-alleges and incorporates by reference each and all of the allegations

**10**  contained in paragraph numbers 1 through 30, as if set out in full.

**11**      32.    PME has a legal right to convert its mobilehome park to resident ownership. City's

**12**  adoption of the Moratorium amounts to an unconstitutional taking and fails substantially to

**13**  advance legitimate government interests as required by the Takings Clause of the Fifth

**14**  Amendment to the United States Constitution and Article I, Section 19 of the California

**15**  Constitution. By adopting the Moratorium, City exceeded its authority and jurisdiction and

**16**  interfered with the statutory and regulatory process as established by the Legislature. The

**17**  Moratorium frustrates uniform standards designed to regulate mobilehome parks.

**18**      33.    The Moratorium works an unconstitutional taking of PME's private property for

**19**  public use because it does not advance any legitimate interest of City and is an illegal exaction

**20**  imposed on PME. Not only did City not observe the mandatory prerequisites set forth in Section

**21**  65858(c) of the Government Code in enacting the Moratorium, therefore rendering the

**22**  Moratorium void, but State law prohibits City from enacting the Moratorium altogether. PME is

**23**  informed and believes, and based on such information and belief alleges, that Defendants enacted

**24**  the Moratorium knowing that it had no power to do so. The Moratorium is clearly illegal in light

**25**  of appellate court opinion and California law and is so unreasonable from a legal standpoint that it

**26**  was clearly intended solely for the purpose of delay and obstruction.

**27**      34.    PME is further informed and believes, and based on such information and belief

**28**  alleges, that City enacted the Moratorium knowing that they did not advance any legitimate

[JEL:jel/145590_3.DOC/110306/4541.013]      -8-

LAW OFFICES<br>GILCHRIST & RUTTER<br>PROFESSIONAL CORPORATION<br>1299 OCEAN AVENUE, SUITE 900<br>SANTA MONICA, CALIFORNIA 90401-1000<br>TEL (310) 393-4000 • FAX (310) 394-4700

1  governmental interests.

2      35.    Even assuming City had the power to enact the Moratorium, PME is informed and

3  believes, and based on such information and belief alleges, that there is not an essential nexus

4  between the Moratorium, and any authority City may have to adopt the Moratorium. Moreover,

5  PME is informed and believes, and based on such information and belief alleges, that the

6  Moratorium is not roughly proportional to the effects of the conversion of PME's mobilehome

7  Park. Rather, the Moratorium prevents PME from exercising a legitimate right to convert its Park

8  to resident ownership and forces PME, a single property owner, to bear a disproportionate share of

9  the cost of allegedly protecting the public safety, health and welfare.

10     36.    PME has suffered and continues to suffer damages, in an amount to be proven at

11 trial, as a result of City's unconstitutional taking of its private property. PME's lawful use of its

12 property has been unlawfully stymied by the imposition of the illegal Moratorium, resulting in

13 damages for a temporary taking in an amount to be proven at trial but believed to be not less than

14 $14,625,000.00.

15

16     WHEREFORE, PME prays for judgment against Defendants, and each of them, as

17 follows:

18     1.    For a judicial declaration of the respective rights and duties of PME and of

19         Defendants with respect to Government Code sections 65858 and 66427.5,

20         California law, and the Moratorium. In particular, PME desires a declaration that:

21         (i) compliance with Government Code sections 65858 and 66427.5 and California

22         law is mandatory; (ii) even if City did have authority to legislate mobilehome park

23         conversions, which it did not, Government Code section 65858 does not allow for

24         the imposition of an interim ordinance to prohibit a current use; (iii) in enacting the

25         Moratorium, Defendants did not comply with the mandatory prerequisites set forth

26         in Section 65858(c) of the Government Code; (iv) in enacting the Moratorium,

27         Defendants improperly attempted to legislate in an area exclusively subject to State

28

[JEL:jel/145590_3.DOC/110306/4541.013]            -9-

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 · FAX (310) 394-4700

1    control; and (vi) said failure to comply with Government Code sections 65858 and

2    66427.5 and California law thereby render the Moratorium invalid;

3    2.    For a preliminary injunction and permanent injunction prohibiting Defendants from

4    enforcing the Moratorium;

5    3.    For recovery of damages against PME in an amount to be proven at trial, but not

6    less than $14,625,000;

7    4.    For an award of costs of suit, expenses, and reasonable attorneys' fees against the

8    City; and

9    5.    For such other further relief as the Court deems just and proper.

10

11    DATED: June 8, 2007            GILCHRIST & RUTTER

12                         Professional Corporation

13

14                         By:

15                         Thomas W. Casparian
                            Attorneys for Plaintiff Palo Mobile Estates

16                         Associates

17

18

19

20

21

22

23

24

25

26

27

28

[JEL:jel/145590_3.DOC/110306/4541.013]       -10-

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 · FAX (310) 394-4700

1

## VERIFICATION

2

3    I, Douglas Kirchner, am a General Partner of Palo Mobile Estates Associates and am

4    authorized to make this verification on its behalf. I have personally viewed and am familiar with

5    the records, files, and proceedings described herein. I know the facts set forth in the attached

6    Complaint to be true. I know the exhibits attached to the Complaint to be true and correct copies

7    of the documents described.

I declare under penalty of perjury that the foregoing is true and correct.

8    Executed this __7__ day of June 2007 at New York, New York.

9

10

11

Douglas Kirchner

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION

WILSHIRE PALISADES BUILDING
1299 OCEAN AVENUE, SUITE 900
**SANTA MONICA, CALIFORNIA 90401-1000**

TELEPHONE (310) 393-4000
FACSIMILE (310) 394-4700
E-MAIL: rclose@gilchristrutter.com

March 9, 2007

## VIA FEDEX

Mayor David E. Woods
 Vice Mayor Patricia Foster
 Councilmember Ruben Abrica
 Councilmember A. Peter Evans
 Councilmember Donna Rutherford
East Palo Alto City Council
East Palo Alto City Hall
2415 University Avenue, 2nd Floor
East Palo Alto, California 94303

> Re: Adoption Of Proposed Ordinance Concerning Moratorium on Conversions of
> Mobilehome Parks – City Council Meeting: March 13, 2007

Dear Mayor Woods, Vice Mayor Foster, and Councilmembers Abrica, Evans and Rutherford:

As you are aware, we represent owners of Palo Mobile Estates ("PME"), a mobilehome park located in the City of East Palo Alto which is planning to convert from a rental park to a resident-owned park pursuant to the Subdivision Map Act, Government Code section 66427.5 (the "Conversion").

In a letter dated March 2, 2007, we urged the City of East Palo Alto ("City") not to adopt a proposed ordinance imposing certain illegal conditions on the conversion of mobilehome parks from rental facilities to resident-owned parks ("Ordinance"). It has come to our attention that the City is now considering an alternative ordinance, this one imposing a temporary forty-five (45) day moratorium on the conversion of mobilehome parks. As with the original Ordinance, an ordinance imposing a temporary moratorium on mobilehome park conversions ("Moratorium") is illegal.

As more fully set forth in our March 2, 2007 letter, under California law, local governments are preempted from legislating in the area of mobilehome park conversions. Not only does California law prevent the City from imposing conditions on the conversions, but it also prevents the City from imposing a Moratorium, which has the effect of delaying or halting mobilehome park conversions. Furthermore, the City has no authority to enact the Moratorium because the conversion of a mobile home park from a leasehold to resident ownership does not constitute a change of use allowing for the imposition of an interim ordinance under Government

EXHIBIT A

Mayor David E. Woods
 Vice Mayor Patricia Foster
 Councilmember Ruben Abrica
 Councilmember A. Peter Evans
 Councilmember Donna Rutherford
East Palo Alto City Council
March 9, 2007
Page 2

Code section 65858. We also note the California courts have held that a local agency simply cannot enact a moratorium on the filing or processing of subdivision applications. *See Building Industry Legal Defense Found. v. Superior Court*, 72 Cal. App. 4th 1410, 1420 (1999). Therefore, the Moratorium would be an improper use of the City's authority to pass interim urgency measures. Accordingly, for reasons set forth herein, we urge the City not to enact the Moratorium.

I.     City's Power Is Strictly Limited To Determining If Owners Have Complied With Specific Requirements Of Government Code Section 66427.5

As more fully set forth in our March 2, 2007 letter, under California law, local governments are preempted from legislating in the area of mobilehome park conversions. The California Court of Appeals has stated that local governments **"only ha[ve] the power to determine if [the applicant] had complied with the requirements of [Section 66427.5]."** *El Dorado Palm Springs, Ltd. v. City of Palm Springs*, 96 Cal. App. 4th 1153, 1163-64 (2002) (emphasis added). The same rational the prohibits the City from imposing the conditions sought in the original Ordinance, prohibits the City from enacting a Moratorium.

The *El Dorado* court conclusively determined that: (i) Government Code section 66427.5 controls a mobile home conversion from a rental park to a resident-owned park (*Id.* at 1158-63); (ii) the purpose of Government Code section 66437.5 is to provide uniform statewide standards for converting rental parks into resident-owned parks, thereby promoting conversions to home ownership (*Id.* at 1169-1170); (iii) the requirements set out in Government Code section 66427.5 are exclusive and local government has no authority to impose additional · conditions (Id. at 1164, 1166); (iv) if the requirements of Government Code section 66427.5 are met, the local agency must approve the conversion application (*Id.* at 1165, 1167); (v) local government does not have the ability or the authority to determine whether a conversion is "bona-fide" or not (*Id.* at 1165); and (vi) mobilehome park residents do not have and cannot have the ability to veto a conversion by withholding support for a conversion application (*Id.* at 1172, 1181-82).

Clearly, under *El Dorado*, the City's authority in is strictly limited to confirming that PME's conversion application complies with the requirements contained in Government Code section 66427.5. As such, the City does not have the authority to delay or halt PME's conversion by imposing a Moratorium. As discuss more fully below, the City's attempts to do so could cause it to be liable to PME for millions of dollars worth of damages.



EXHIBIT _A_

Mayor David E. Woods
 Vice Mayor Patricia Foster
 Councilmember Ruben Abrica
 Councilmember A. Peter Evans
 Councilmember Donna Rutherford
East Palo Alto City Council
March 9, 2007
Page 3

II.    The Conversion Of A Mobilehome Park From A Leasehold To Resident Ownership Does
       Not Constitute A Change Of Use Allowing For The Imposition Of An Interim Ordinance
       Under Government Code Section 65858.

       The City will presumably seek to adopt the Moratorium pursuant to Government Code
section 65858. Section 65858(a) states that the local legislative body may "adopt as an urgency
measure an interim ordinance **prohibiting any uses** that may be in conflict with a contemplated
general plan, specific plan, or zoning proposal . . ." (emphasis added). However, the Moratorium
does not purport (nor could it) to prohibit the mobilehome parks' use as mobilehome parks.
Rather, it attempts to prohibit temporarily the conversion of mobilehome parks to resident
ownership. As the court made clear in *El Dorado* however, "[A] change in form of ownership is
not a change in use. After the change of ownership, the mobilehome park will remain a
mobilehome park." 96 Cal. App. 4th at 1162.

       Furthermore, it is well established that a local agency cannot enact a moratorium on the
filing or processing of subdivision applications. *See Building Indus. Legal Def. Fund. v.
Superior Court*, 72 Cal. App. 4th 1410. In *Building Industry*, the court held, "[n]othing in
[Section 65858] permits a city to prohibit the formal processing of development applications,
such as a tentative subdivision map." *Id.* at 1420. The court also found that "[t]he Subdivision
Map Act has established a comprehensive procedure for processing development applications,
and **nothing in it allows a city to prohibit the processing of a tentative subdivision map that
is complete, a city cannot use an interim ordinance as a backdoor method to modify the
rules.**" *Id.* at 1417 (emphasis added).

       In sum, Section 65858(a) was not intended, and cannot be used, to circumvent the City's
limitations in legislating mobilehome park conversions.

III.   There Is No Urgency Or Threat Justifying The Enactment Of A Moratorium.

       It is also well-established that unless the ordinance "recites facts that constitute the
urgency and those facts may reasonably be held to constitute an urgency," an interim urgency
ordinance will be held invalid. *216 Sutter Bay Assoc. v. County of Sutter*, 58 Cal. App. 4th 860,
868 (1997). The Board of Supervisors may not use its power to pass interim urgency measures to
further public policy goals where there is no finding of "a current and immediate threat." Gov't
Code § 65858(c).

       Here, there can be no facts which can support a finding of an "urgency" or an "immediate
threat" to public health, safety and welfare because mobilehome park conversions pose no threat



EXHIBIT _A_

Mayor David E. Woods
 Vice Mayor Patricia Foster
 Councilmember Ruben Abrica
 Councilmember A. Peter Evans
 Councilmember Donna Rutherford
East Palo Alto City Council
March 9, 2007
Page 4

at all to the public health, safety and welfare. They certainly do not pose an "urgent" threat. Indeed, there is an elaborate state legislative scheme that is designed to both encourage conversions and protect affordable housing.

The Subdivision Map Act, and in particular Government Code section 66427.5, provides a comprehensive structure for mobile home conversions while also providing mitigation measures. It is settled law that section 66427.5 establishes a uniform statewide approach for converting mobile home parks to resident-owned facilities. *See El Dorado*, 96 Cal. App. 4th at 1168-69. Specifically, Government Code section 66427.5(f) provides statutory rent control protection. Furthermore, there is a state program under the Department of Housing and Community Development in existence for the sole purpose of providing financial assistance to low-income residents who choose to purchase their lot, thus encouraging local agencies and residents to support conversions to resident ownership. Moreover, mobile home park residents *may continue to rent their units even after conversion to resident-ownership*, thus calling into question whether any threat exists at all, let alone the immediacy of any alleged threat.

## IV.    PME Will Seek Damages Against The City For A Delay In The Approval Of Its Conversion Application.

California law is clear that local governments are pre-empted from attempting to legislate in the area of mobile home park conversions. The same rational that prohibits the City from imposing the conditions sought in the original Ordinance prohibits the City from enacting a Moratorium. If PME is forced to seek court intervention to invalidate the illegal Moratorium, or to invalidate any other actions the City takes to hinder or halt its Conversion, such delay caused by having to seek legal redress will result in damages to PME.

Any delay caused by the City to the Conversion will cause the City to be liable for inverse condemnation, or "takings," damages. The proper measure of damages for a taking would award the landowner "the return on the portion of fair market value that is lost as a result of regulatory restriction," or "the market rate return computed over the period of the temporary taking on the difference between the property's fair market value without the regulatory restriction and its fair market value with the restriction." *Wheeler v. County of Pleasant Grove*, 833 F.2d 267, 270-71 (11th Cir. 1987). Courts are in agreement that appreciation of the property during a taking must not be factored into the inverse condemnation damages calculation. *See Wheeler v. County of Pleasant Grove*, 833 F.2d 267, 271 (11th Cir. 1987); *Herrington v. County of Sonoma*, 790 F. Supp. 909, 914 (N.D. Cal. 1991), *aff'd*, 12 F.3d 901 (9th Cir. 1993). The Unites States Supreme Court has expressly held that because the market value of a property


EXHIBIT A

Mayor David E. Woods
 Vice Mayor Patricia Foster
 Councilmember Ruben Abrica
 Councilmember A. Peter Evans
 Councilmember Donna Rutherford
East Palo Alto City Council
March 9, 2007
Page 5

frequently appreciates during the period of a temporary taking, compensation is not measured by comparing the value of the property before and after its taking, because to do so would often result in no compensation being awarded the property owner despite having lost the use or value of its property during the taking. *Wheeler*, 833 F.2d at 271, citing *Kimball Laundry Co. v. United States*, 338 U.S. 1, 7 (1949)).

Please understand that the park is not being closed and no one is being evicted. Upon conversion, residents have the choice whether to buy the lot their home currently sits on or to continue renting. In fact, low income residents will be forever protected by state rent control which caps rent increases at CPI, or less. In San Mateo County, a two person household earning $72,400 qualifies as low income (for a four person household, an annual income level of $90,500 qualifies.)

PME hopes that the City Council will refrain from approving either the original Ordinance, which imposes illegal conditions on mobilehome park conversions, or the Moratorium, which imposes an illegal delay on mobilehome park conversions. Both are an invalid exercise of the City's authority. But if the City enacts either, thereby delaying the Conversion, we will be forced to bring claims against the City for inverse condemnation and other wrongful acts. Damages will undoubtedly run into the millions.

Very truly yours,

GILCHRIST & RUTTER
Professional Corporation

Richard H. Close
Of the Firm

ynn:ynn/141785_1.DOC/030707
4597.001

cc:    Michael S. Lawson, Esq., City Counsel (Via FedEx)



EXHIBIT A

ORDINANCE NO.  299

AN URGENCY ORDINANCE OF THE CITY COUNCIL OF THE CITY
OF EAST PALO ALTO ADOPTING AND IMPOSING A TEMPORARY
MORATORIUM ON THE CONVERSION OF MOBILEHOME PARKS
TO RESIDENT OWNERSHIP

The City Council of the City of East Palo Alto does ordain as follows:

**SECTION 1.**   This ordinance is adopted pursuant to Gov. Code §§ 36937(d) and 65858.  The
purpose of this ordinance is to prohibit the conversion of mobilehome parks to resident
ownership within the city of East Palo Alto pending enactment of permanent regulations
affecting such conversions.  The East Palo Alto City Council finds and determines as follows:

  a.  Mobilehome parks provide a significant segment of the affordable housing stock
      available for East Palo Alto residents.  At present there are two mobilehome parks subject
      to rent regulation within East Palo Alto.  These two parks containing some 150
      mobilehome spaces are subject to the rent adjustment provisions of Chapter 14.04 of the
      East Palo Alto Municipal Code (EPAMC), incorporated by reference herein.

  b.  In most instances, mobilehome residents own or are purchasing their mobilehomes and
      pay monthly rent for the spaces beneath.  Annual rent increases for mobilehome spaces
      are regulated under Chapter 14.04 of the EPAMC.

  c.  The reasons for the City's Rent Adjustment Ordinance are set forth at § 14.04.020 of the
      EPAMC.

  d.  The Housing Element of the City's General Plan, incorporated by reference herein, seeks
      to preserve affordable housing by conserving the City's existing stock of mobilehomes
      through enforcement of City ordinances that protect mobilehome parks from conversion
      and by providing rent stabilization protection.  The Housing Element acknowledges, and
      the testimony and evidence adduced at the March 13, 2007 public hearing confirms, that
      residents of mobilehome parks are seniors, or low-to-moderate income residents unable
      to purchase homes in the Bay Area housing market.  Many residents are on fixed-incomes
      or are disabled while other residents would have great difficulty in relocating their older
      mobilehomes to other parks in San Mateo County with comparable amenities.

  e.  State law permits a mobilehome park to be subdivided into separate lots, such that
      residents may own not only the mobilehome itself, but also the space beneath it.  These
      subdivisions are known as "the conversions of a mobilehome park to resident
      ownership."  Upon such conversion to resident ownership, local rent control provisions
      are, by state law, no longer applicable.  The City has been notified by representatives of
      one mobilehome park owner that the owner intends to seek conversion of a park to
      resident ownership.

EXHIBIT  

APR. 26. 2007  2:39PM    Y OF E PALO ALTO                    NO. 5385    P. 3

Ordinance No. 299
Page 2

f.  When initiated by residents of a mobilehome park, the conversion of the park to resident ownership may provide the residents with the security and advantages of full homeownership. Such resident-initiated conversions, however, can be challenging in East Palo Alto, where the land underlying mobilehome parks is often valued in the millions of dollars, far beyond the financial reach of most park residents.

g.  The economic displacement of nonpurchasing residents resulting from the conversion of a mobilehome park initiated by the park owner is subject to Gov. Code § 66427.5. State courts have previously held that local rent controls are displaced upon the sale of a single lot within a mobilehome park. Local experiences indicate that when local rent control is removed, space rents and the sales values of mobilehomes are destabilized. Although state law provides some protection for certain mobilehome park residents, the protections may be inadequate for residents who do not qualify as a lower income household. Furthermore, the rent adjustment provisions applied pursuant to subdivision (f) of Gov. Code § 66427.5 do not appear to extend to new tenants.

h.  While Gov. Code § 66427.5 establishes certain parameters for the processing of an application for conversion of a mobilehome park to resident ownership, it appears to permit some level of local regulation which may include, but need not be limited to: specifying the procedures for accepting and processing applications; regulating the form, content and use of the survey required by Gov. Code § 66427.5; establishing standards to ensure that a conversion to resident ownership is "bona fide" in accordance with case law and Section 2 of Chapter 1142 of the California Statutes of 2002; establishing local incentives for voluntary protection of housing affordable to lower income households within mobilehome parks; or such other regulations as may essential to avoid the current and immediate loss of a significant portion of the City's vital affordable housing stock.

i.  It is in the interest of the city of East Palo Alto, of owners and residents of mobilehome parks, and of the community as a whole, that the Council consider regulations to promote the lawful purposes of preserving affordable housing within mobilehome parks, while providing opportunities for resident ownership wherever feasible and appropriate. The City Council finds that the adoption of the temporary moratorium is necessary to provide staff and advisory bodies sufficient time to study the issues and make recommendations on whether and how to regulate mobilehome park conversions consistent with the provisions of Gov. Code § 66427.5.

j.  If a temporary moratorium is not imposed, it would be destructive of any proposed future requirements and regulations if, during the period they are being studied and considered for adoption, parties seeking to avoid their operation and effect are permitted to convert existing mobilehome parks to resident ownership in a manner that might defeat in whole, or in part, the objectives of such requirements and regulations. As a result, it is necessary to establish a moratorium and prohibition on the conversion of mobilehome parks to resident ownership within the city of East Palo Alto pending the completion of the City's review of the impacts of park conversions and the enactment of local regulations consistent with the provisions of Gov. Code § 66427.5.



EXHIBIT B

APR. 26. 2007  2:40PM    .Y OF E PALO ALTO                    NO. 5385  P. 4

Ordinance No. 299
Page 3

    k.  Conversion of the park to a resident-owned park fundamentally alters the nature of its use
       because of the significant increase in land value, which would likely cause a significant
       change in the demographic makeup of the park residents.

    l.  The March 13, 2007 Administrative Report to the City Council is hereby adopted as part
      of the administrative record of these proceedings.

**SECTION 2.**  During the period this ordinance remains in effect, no permit or approval of any
entitlement application shall be granted allowing the conversion of a mobilehome park to
resident ownership within the city of East Palo Alto.

**SECTION 3.**  Based on the findings and conditions set forth in Section I of this ordinance, the
City Council determines and declares that the conversion of mobilehome parks to resident
ownership without local regulation consistent with the provisions of Gov. Code § 66427.5
constitutes a current and immediate threat to the public health, safety, and welfare; and that this
ordinance is necessary as an urgency measure for the immediate preservation of the public peace,
health, or safety.

**SECTION 4.**  For the purposes of this ordinance, "mobilehome park" shall mean a mobilehome
park as defined in Civil Code §798.3(a).  The phrase "conversion of a mobilehome park to
resident ownership" shall mean a subdivision of a mobilehome park pursuant to Gov. Code §
66427.5.

**SECTION 5.**  During the period this ordinance remains in effect, the provisions of this
ordinance shall govern.  If there is any conflict between the provisions of this ordinance and any
provision of the EPAMC or any City ordinance, resolution, or policy, the provisions of this
ordinance shall control.

**SECTION 6.**  Environmental Determination. This ordinance is exempt from the California
Environmental Quality Act ("CEQA") pursuant to State CEQA Guidelines § 15061(b)(3) and §
15262 in that it can be seen with certainty that there is no possibility that this ordinance or its
implementation would have a significant effect on the environment. The Planning Manager is
directed to file a notice of exemption in accordance with CEQA and the State CEQA Guidelines.

**SECTION 7.**  Severability.  If any section, subsection, sentence, clause or phrase of this
ordinance is for any reason held to be unconstitutional and invalid, such decision shall not affect
the validity of the remaining portion of this ordinance.  The City Council hereby declares that it
would have passed this ordinance and every section, subsection, sentence, clause or phrase
thereof, irrespective of the fact that any one or more sections, subsections, sentences, clauses or
phrases be declared unconstitutional or invalid.



`APR. 26. 2007  2:40PM    Y OF E PALO ALTO                NO. 5385  P. 5`

Ordinance No. 299
Page 4

**SECTION 8.** Effective Date. This ordinance is an ordinance for the immediate preservation of the public health, safety and welfare and is hereby declared to be in full force and effect immediately upon its passage, and shall continue in full force and effect for a period of 45 days from its date of adoption unless the terms and time period of this ordinance are extended by the City Council in accordance with Gov. Code § 68585.

*       *       *

**PASSED AND ADOPTED** by the City Council of the City of East Palo Alto this  13th day of March, 2007 by the following vote:

| | |
|---|---|
| **AYES:** | **Abrica, Rutherford, Foster, Woods** |
| **NOES:** | **Evans** |
| **ABSTAIN:** | **0** |
| **ABSENT:** | **0** |

David Woods, Mayor

ATTEST:

Deputy City Clerk

**APPROVED AS TO FORM:**

City Attorney

EXHIBIT $\mathcal{B}$

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION

WILSHIRE PALISADES BUILDING
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000

TELEPHONE (310) 393-4000
FACSIMILE (310) 394-4700
E-MAIL: rclose@gilchristrutter.com

April 13, 2007

VIA FEDEX

Mayor David E. Woods
 Vice Mayor Patricia Foster
 Councilmember Ruben Abrica
 Councilmember A. Peter Evans
 Councilmember Donna Rutherford
East Palo Alto City Council
East Palo Alto City Hall
2415 University Avenue, 2nd Floor
East Palo Alto, California 94303

> Re: Proposed Extension of 45-Day Moratorium on Conversions of Mobilehome
>     Parks

Dear Mayor Woods, Vice Mayor Foster, and Councilmembers Abrica, Evans and Rutherford:

As you are aware, we represent owners of Palo Mobile Estates ("PME"), a mobilehome
park located in the City of East Palo Alto ("City") which is planning to convert from a rental
park to a resident-owned park pursuant to Government Code section 66427.5 of the Subdivision
Map Act (the "Conversion").

We are in receipt of the City Attorney's Administrative Report dated April 17, 2007
("Report") in which the City Attorney discusses the possibility of enacting an ordinance to
extend the City's forty-five (45) day moratorium on the conversion of mobilehome parks
("Moratorium"), originally set to expire on April 27, 2007, for an additional three (3) months to
July 27, 2007 ("Extension"). We had previously advised the City in a letter dated March 9, 2007
that the Moratorium was illegal. The Extension is likewise illegal for the reasons set forth
below.

Indeed, not only is the Extension illegal, but illogical. California law is clear that
urgency ordinances adopted pursuant to Government Code section 65858, such as the Extension,
are only warranted where there is "a **current and immediate** threat to the public health, safety,
or welfare . . .." Gov't § 65858(c) (emphasis added). As the City Attorney notes in his Report,
PME intends to file a subdivision application to convert its Park pursuant to Government Code


EXHIBIT C

Mayor David E. Woods
Vice Mayor Patricia Foster
Councilmember Ruben Abrica
Councilmember A. Peter Evans
Councilmember Donna Rutherford
East Palo Alto City Council
April 13, 2007
Page 2

section 66427.5.[1] However, PME has not yet done so. In fact, **no mobilehome park in the City has yet filed a conversion application**. Even if PME, or any other mobilehome park, filed a conversion application today, it will undoubtedly not be heard or approved prior to July 27, 2007, the proposed Extension date. Clearly, there can be no exigency meriting an Extension on the Moratorium where, among other things, there is no possibility of a mobilehome park converting to resident ownership prior to the expiration of the Extension. (As explained below, a Moratorium does not prevent or stop the filing or processing of any application.)

Furthermore, the Report indicates that the City is considering a new ordinance concerning mobilehome park conversions. Section I(j) of the Extension alleges that, "it would be destructive of any proposed future requirements and regulations if, during the period they are being studied and considered for adoption, parties seeking to avoid their operation and effect **are permitted to convert existing mobilehome parks to residents ownership. . .."** (emphasis added). However, this argument is without merit. As discussed above, no hearing will be held nor a conversion application approved prior to the proposed expiration of the Extension.

Moreover, in order to effect a conversion pursuant to Government Code section 66427.5, PME is obligated to meet the requirements of that section. The California Court of Appeals has stated that local governments **"only ha[ve] the power to determine if [the applicant] had complied with the requirements of [Section 66427.5]."** *El Dorado Palm Springs, Ltd. v. City of Palm Springs*, 96 Cal. App. 4th 1153, 1163-64 (2002) (emphasis added). Accordingly, the City will not be able to enact any legislation that will change the fundamental requirements of Government Code section 66427.5. Rather, any legislation that the City passes is limited to addressing the City's process for determining whether applicants have complied with the requirements set forth in Section 66427.5. As such, whether PME's application is submitted before or after the passage of such legislation is irrelevant and the Extension is therefore unnecessary.

---

[1] Please note that the Report erroneously indicates that "no survey of residents will have taken place by the time [PME's] application is filed" and that it "will result in a determination that the application is incomplete." To the contrary, PME has made and will make every effort to comply with the provisions of Government Code section 66427.5. The City has no cause to assert at this time that PME's Conversion application will fail to meet the requirements of Government Code section 66427.5. However, even if this were the case, which is it not, it merely highlights the weakness of the City's argument that an Extension is necessary since this alleged deficient would further delay the time required to complete PME's Conversion beyond the three month extension period proposed in the Report.



Mayor David E. Woods
 Vice Mayor Patricia Foster
 Councilmember Ruben Abrica
 Councilmember A. Peter Evans
 Councilmember Donna Rutherford
East Palo Alto City Council
April 13, 2007
Page 3

    In sum, extending the Moratorium where (a) no conversion applications have been filed
with the City, (b) there is virtually no possibility of a mobilehome park conversion application
being processed and approved prior to the expiration of the Extension, and (c) the City is likely
to adopt a new ordinance concerning mobilehome park conversions prior to any mobilehome
park applications being approved is both illegal and illogical. In light of these facts, the
Extension serves no logical purpose.

    The City Attorney's Report advised the City that, "[t]aking no action [i.e., not
extending the Moratorium] is a prudent, low-risk option that will still allow the City to
exercise discretion in reviewing and deciding on the conversion application." (Emphasis
added.) We urge the City to heed the City Attorney's advice and take the prudent, low-risk
option of allowing the Moratorium to expire. The City Attorney's Report noted that the
Extension "would probably have little fiscal impact, unless the extended moratorium is
challenged. In such case the City would likely incur some legal defense costs." (Emphasis
added.) Please be advised that PME will challenge the Extension. In fact, this law firm has filed
suit against another local government challenging a similar extension of an illegal moratorium.
There, as here, damages will undoubtedly run into the millions.

I.    City's Power Is Strictly Limited To Determining If Owners Have Complied With
      Specific Requirements Of Government Code Section 66427.5

    As set forth in our March 2, 2007 and March 9, 2007 letters, under California law, local
governments are preempted from legislating in the area of mobilehome park conversions. The
City erroneously asserts in Section I(h) of the Extension that Government code section 66427.5
"permit[s] some level of local regulation. . . [including] regulating the form, content and use of
the survey required by Gov. Code § 66427.5; establishing standards to ensure that a conversion
to resident ownership is 'bona fide' . . . or such other regulations as may [sic] essential to avoid
the current and immediate loss of a significant portion of the City's vital affordable housing
stock."

    Contrary to the City's assertion, Government Code section 66427.5 does not "permit
some level of local regulation." The City clearly does not have the authority to enact or extend a
Moratorium on the conversion process.[2] The California Court of Appeals has stated that local

---

[2] Likewise, as more fully discussed in our letter dated March 2, 2007, the City is also mistaken
in its assertion in Section I(h) of the Extension that it is allowed to "regulat[e] the form, content
and use of the survey required by Gov. Code § 66427.5; [or] establish[] standards to ensure that a



Mayor David E. Woods
 Vice Mayor Patricia Foster
 Councilmember Ruben Abrica
 Councilmember A. Peter Evans
 Councilmember Donna Rutherford
East Palo Alto City Council
April 13, 2007
Page 4

governments "only ha[ve] the power to determine if [the applicant] had complied with the requirements of [Section 66427.5]." *El Dorado Palm Springs, Ltd. v. City of Palm Springs*, 96 Cal. App. 4th 1153, 1163-64 (2002) (emphasis added).

Indeed, the *El Dorado* court conclusively determined that: (i) Government Code section 66427.5 controls a mobile home conversion from a rental park to a resident-owned park (*Id.* at 1158-63); (ii) the purpose of Government Code section 66437.5 is to provide uniform statewide standards for converting rental parks into resident-owned parks, thereby promoting conversions to home ownership (*Id.* at 1169-1170); (iii) the requirements set out in Government Code section 66427.5 are exclusive and local government has no authority to impose additional conditions (Id. at 1164, 1166); (iv) if the requirements of Government Code section 66427.5 are met, the local agency must approve the conversion application (*Id.* at 1165, 1167); (v) local government does not have the ability or the authority to determine whether a conversion is "bona-fide" or not (*Id.* at 1165); and (vi) mobilehome park residents do not have and cannot have the ability to veto a conversion by withholding support for a conversion application (*Id.* at 1172, 1181-82).

Clearly, under *El Dorado*, the City's authority is strictly limited to confirming that PME's conversion application, if and when it is submitted, complies with the requirements contained in Government Code section 66427.5. As such, the City does not have the authority to delay or halt PME's Conversion by imposing or extending a Moratorium. As discussed more fully below, the City's attempts to do so could cause it to be liable to PME for millions of dollars worth of damages.

II.     The Conversion Of A Mobilehome Park From A Leasehold To Resident Ownership Does Not Constitute A Change Of Use Allowing For The Imposition Of An Interim Ordinance Under Government Code Section 65858.

Government Code section 65858(a) states that the local legislative body may "adopt as an urgency measure an interim ordinance **prohibiting any uses** that may be in conflict with a contemplated general plan, specific plan, or zoning proposal . . ." (emphasis added). However, as with the Moratorium, the Extension does not purport (nor could it) to prohibit a mobilehome parks' use as a mobilehome park. Rather, it attempts to temporarily prohibit the conversion of mobilehome parks to resident ownership. As the court made clear in *El Dorado* however, "[A]

---

conversion to resident ownership is bona fide." As we advised the City in our March 2, 2007 letter, this is contrary to California law for the reasons set forth therein.



Mayor David E. Woods
 Vice Mayor Patricia Foster
 Councilmember Ruben Abrica
 Councilmember A. Peter Evans
 Councilmember Donna Rutherford
East Palo Alto City Council
April 13, 2007
Page 5

change in form of ownership is not a change in use. After the change of ownership, the mobilehome park will remain a mobilehome park." 96 Cal. App. 4th at 1162.

Furthermore, it is well established that a local agency cannot enact a moratorium on the filing or processing of subdivision applications. *See Building Indus. Legal Def. Fund. v. Superior Court*, 72 Cal. App. 4th 1410. In *Building Industry*, the court held, "[n]othing in [Section 65858] permits a city to prohibit the formal processing of development applications, such as a tentative subdivision map." *Id.* at 1420. The court also found that "[t]he Subdivision Map Act has established a comprehensive procedure for processing development applications, **and nothing in it allows a city to prohibit the processing of a tentative subdivision map that is complete, a city cannot use an interim ordinance as a backdoor method to modify the rules.**" *Id.* at 1417 (emphasis added).

In sum, Section 65858(a) was not intended, and cannot be used, to circumvent the City's limitations in legislating mobilehome park conversions.

## III.   There Is No Urgency Or Threat Justifying The Enactment Of A Moratorium.

It is also well-established that unless the ordinance "recites facts that constitute the urgency and those facts may reasonably be held to constitute an urgency," an interim urgency ordinance will be held invalid. *216 Sutter Bay Assoc. v. County of Sutter*, 58 Cal. App. 4th 860, 868 (1997). The Board of Supervisors may not use its power to pass interim urgency measures to further public policy goals where there is no finding of "a current and immediate threat." Gov't Code § 65858(c).

Here, as discussed above, there can be no facts which can support a finding of an "urgency" or an "immediate threat" to public health, safety and welfare because mobilehome park conversions pose no threat at all to the public health, safety and welfare. They certainly do not pose an "urgent" threat, especially here, where (a) no conversion applications have been filed with the City, (b) there is virtually no possibility of a mobilehome park conversion application being processed and approved prior to the proposed July 27, 2007 expiration of the Extension, and (c) the City is likely to adopt a new ordinance concerning mobilehome park conversions prior to any mobilehome park applications being approved.

There is an elaborate state legislative scheme that is designed to both encourage conversions and protect affordable housing. The Subdivision Map Act, and in particular Government Code section 66427.5, provides a comprehensive structure for mobilehome park



Mayor David E. Woods
 Vice Mayor Patricia Foster
 Councilmember Ruben Abrica
 Councilmember A. Peter Evans
 Councilmember Donna Rutherford
East Palo Alto City Council
April 13, 2007
Page 6

conversions while also providing mitigation measures. It is settled law that section 66427.5 establishes a uniform statewide approach for converting mobile home parks to resident-owned facilities. *See El Dorado*, 96 Cal. App. 4th at 1168-69. Specifically, Government Code section 66427.5(f) provides statutory rent control protection. Furthermore, there is a state program under the Department of Housing and Community Development in existence for the sole purpose of providing financial assistance to low-income residents who choose to purchase their lot, thus encouraging local agencies and residents to support conversions to resident ownership. Moreover, mobile home park residents *may continue to rent their units even after conversion to resident-ownership*, thus calling into question whether any threat exists at all, let alone the immediacy of any alleged threat.

## IV. PME Will Seek Damages Against The City For A Delay In The Approval Of Its Conversion Application.

Although no application has yet been submitted, PME has clearly indicated that it will apply for a Conversion. PME's ability to prepare its application and begin the conversion process provided for pursuant to Government Code section 66427.5 has been compromised by the Moratorium and will be further compromised by any Extension thereto.

California law is clear that local governments are pre-empted from attempting to legislate in the area of mobile home park conversions. The same rational that prohibits the City from imposing a Moratorium prevents it from approving the Extension. If PME is forced to seek court intervention to invalidate the illegal Extension, or to invalidate any other actions the City takes to hinder or halt its Conversion, such delay caused by having to seek legal redress will result in damages to PME.

Any delay caused by the City to the Conversion will cause the City to be liable for inverse condemnation, or "takings," damages. The proper measure of damages for a taking would award the landowner "the return on the portion of fair market value that is lost as a result of regulatory restriction," or "the market rate return computed over the period of the temporary taking on the difference between the property's fair market value without the regulatory restriction and its fair market value with the restriction." *Wheeler v. County of Pleasant Grove*, 833 F.2d 267, 270-71 (11th Cir. 1987). Courts are in agreement that appreciation of the property during a taking must not be factored into the inverse condemnation damages calculation. *See Wheeler v. County of Pleasant Grove*, 833 F.2d 267, 271 (11th Cir. 1987); *Herrington v. County of Sonoma*, 790 F. Supp. 909, 914 (N.D. Cal. 1991), *aff'd*, 12 F.3d 901 (9th Cir. 1993). The Unites States Supreme Court has expressly held that because the market value of a property



EXHIBIT C

Mayor David E. Woods
 Vice Mayor Patricia Foster
 Councilmember Ruben Abrica
 Councilmember A. Peter Evans
 Councilmember Donna Rutherford
East Palo Alto City Council
April 13, 2007
Page 7

frequently appreciates during the period of a temporary taking, compensation is <u>not</u> measured by comparing the value of the property before and after its taking, because to do so would often result in no compensation being awarded the property owner despite having lost the use or value of its property during the taking. *Wheeler*, 833 F.2d at 271, citing *Kimball Laundry Co. v. United States*, 338 U.S. 1,7 (1949)).

Again, we stress that upon Conversion, the Park will not be closed and no one will be evicted. Upon Conversion, residents have the choice whether to buy the lot their home currently sits on or to continue renting. In fact, low income residents will be forever protected by state rent control which caps rent increases at CPI, or less. In San Mateo County, a two person household earning $72,400 qualifies as low income (for a four person household, an annual income level of $90,500 qualifies.)

PME hopes that the City Council will refrain from approving the Extension, which extends an already illegal delay on mobilehome park conversions. However, if the City does enact the Extension, thereby further delaying the Conversion, we will be forced to bring claims against the City for inverse condemnation and other wrongful acts. Damages will undoubtedly run into the millions.

Very truly yours,

GILCHRIST & RUTTER
Professional Corporation

Richard H. Close
Of the Firm

ynn:ynn/143727_1.DOC/041307
4604.001

cc:    Michael S. Lawson, Esq., City Counsel (Via FedEx)

## ORDINANCE NO. 300

## AN URGENCY ORDINANCE OF THE CITY COUNCIL OF THE CITY OF EAST PALO ALTO EXTENDING A TEMPORARY MORATORIUM ON THE CONVERSION OF MOBILEHOME PARKS TO RESIDENT OWNERSHIP FOR AN ADDITIONAL THREE MONTHS, TO JULY 27, 2007

The City Council of the City of East Palo Alto does ordain as follows:

**SECTION 1.** This ordinance is adopted pursuant to Gov. Code §§ 36937(d) and 65858. The purpose of this ordinance is to extend the prohibition on the conversion of mobilehome parks to resident ownership within the city of East Palo Alto, pending enactment of permanent regulations affecting such conversions. The East Palo Alto City Council finds and determines as follows:

a. Mobilehome parks provide a significant segment of the affordable housing stock available for East Palo Alto residents. At present there are two mobilehome parks subject to rent regulation within East Palo Alto. These two parks containing some 150 mobilehome spaces are subject to the rent adjustment provisions of Chapter 14.04 of the East Palo Alto Municipal Code (EPAMC), incorporated by reference herein.

b. In most instances, mobilehome residents own or are purchasing their mobilehomes and pay monthly rent for the spaces beneath. Annual rent increases for mobilehome spaces are regulated under Chapter 14.04 of the EPAMC.

c. The reasons for the City's Rent Adjustment Ordinance are set forth at § 14.04.020 of the EPAMC.

d. The Housing Element of the City's General Plan, incorporated by reference herein, seeks to preserve affordable housing by conserving the City's existing stock of mobilehomes through enforcement of City ordinances that protect mobilehome parks from conversion and by providing rent stabilization protection. The Housing Element acknowledges, and the testimony and evidence adduced at the March 13, 2007 and April 24, 2007 public hearings confirm, that residents of mobilehome parks are seniors, or low-to-moderate income residents unable to purchase homes in the Bay Area housing market. Many residents are on fixed-incomes or are disabled while other residents would have great difficulty in relocating their older mobilehomes to other parks in San Mateo County with comparable amenities.

e. State law permits a mobilehome park to be subdivided into separate lots, such that residents may own not only the mobilehome itself, but also the space beneath it. These subdivisions are known as "the conversions of a mobilehome park to resident ownership." Upon such conversion to resident ownership, local rent control provisions are, by state law, no longer applicable. The City has been notified by representatives of one mobilehome park owner that the owner intends to seek conversion of a park to resident ownership. $\mathcal{D}$

Ordinance No. 300
Page 2

f. When initiated by residents of a mobilehome park, the conversion of the park to resident ownership may provide the residents with the security and advantages of full homeownership. Such resident-initiated conversions, however, can be challenging in East Palo Alto, where the land underlying mobilehome parks is often valued in the millions of dollars, far beyond the financial reach of most park residents.

g. The economic displacement of nonpurchasing residents resulting from the conversion of a mobilehome park initiated by the park owner is subject to Gov. Code § 66427.5. State courts have previously held that local rent controls are displaced upon the sale of a single lot within a mobilehome park. Local experiences indicate that when local rent control is removed, space rents and the sales values of mobilehomes are destabilized. Although state law provides some protection for certain mobilehome park residents, the protections may be inadequate for residents who do not qualify as a lower income household. Furthermore, the rent adjustment provisions applied pursuant to subdivision (f) of Gov. Code § 66427.5 do not appear to extend to new tenants.

h. While Gov. Code § 66427.5 establishes certain parameters for the processing of an application for conversion of a mobilehome park to resident ownership, it appears to permit some level of local regulation which may include, but need not be limited to: specifying the procedures for accepting and processing applications; regulating the form, content and use of the survey required by Gov. Code § 66427.5; establishing standards to ensure that a conversion to resident ownership is "bona fide" in accordance with case law and Section 2 of Chapter 1142 of the California Statutes of 2002; establishing local incentives for voluntary protection of housing affordable to lower income households within mobilehome parks; or such other regulations as may essential to avoid the current and immediate loss of a significant portion of the City's vital affordable housing stock.

i. It is in the interest of the city of East Palo Alto, of owners and residents of mobilehome parks, and of the community as a whole, that the Council consider regulations to promote the lawful purposes of preserving affordable housing within mobilehome parks, while providing opportunities for resident ownership wherever feasible and appropriate. The City Council finds that the extension of the temporary moratorium is necessary to provide staff and advisory bodies sufficient time to study the issues and make recommendations on whether and how to regulate mobilehome park conversions consistent with the provisions of Gov. Code § 66427.5.

j. If the temporary 45-day adopted March 13, 2007 and scheduled to expire April 27, 2007 is not extended, it would be destructive of any proposed future requirements and regulations if, during the period they are being studied and considered for adoption, parties seeking to avoid their operation and effect are permitted to convert existing mobilehome parks to resident ownership in a manner that might defeat in whole, or in part, the objectives of such requirements and regulations. As a result, it is necessary to extend the moratorium and prohibition on the conversion of mobilehome parks to resident ownership within the city of East Palo Alto pending the completion of the City's review of the impacts of park conversions and the enactment of local regulations consistent with the provisions of Gov. Code § 66427.5.

Ordinance No. 300
Page 3

k. Conversion of the park to a resident-owned park fundamentally alters the nature of its use because of the significant increase in land value, which would likely cause a significant change in the demographic makeup of the park residents.

l. During the initial moratorium, a report was made to the Rent Stabilization Board regarding the justification for the moratorium; this report was made because conversion to a resident-owned park would result in loss of protections afforded by the City's rent stabilization program;

m. During the initial moratorium, a report was made to the Planning Commission regarding the likely filing of a subdivision application to convert Palo Mobile Estates mobile home park to a resident-owned park; this report was made because the Planning Commission is the initial decision-making body regarding subdivision applications. The Planning Commission was also given information regarding similar proceedings in other communities and the possibility of new legislation that might guide the processing of such applications;

n. During the initial moratorium, a meeting of stakeholders, including Palo Mobile Estates residents and the park owner's representatives, was facilitated by Mayor Woods and Vice Mayor Foster; the purpose of this meeting was to identify common concerns and possible compromises.

o. During the initial moratorium, City staff monitored bills introduced in the state Assembly and Senate to amend Gov. Code § 66427.5, the statute which currently guides the conversion process; and

p. City staff also monitored, and consulted with, other communities with similar moratoriums in place or recently-expired, such as the counties of Santa Cruz and Sonoma, and the city of Santa Rosa. Staff continues to monitor the 30 or so communities in California with conversion applications on file or imminent.

q. The April 17, 2007 Administrative Report to the City Council is hereby adopted as part of the administrative record of these proceedings.

**SECTION 2.** During the period this ordinance remains in effect, no permit or approval of any entitlement application shall be granted allowing the conversion of a mobilehome park to resident ownership within the city of East Palo Alto.

**SECTION 3.** Based on the findings and conditions set forth in Section 1 of this ordinance, the City Council determines and declares that the conversion of mobilehome parks to resident ownership without local regulation consistent with the provisions of Gov. Code § 66427.5 constitutes a current and immediate threat to the public health, safety, and welfare; and that this ordinance is necessary as an urgency measure for the immediate preservation of the public peace, health, or safety.

Ordinance No. 300
Page 4

**SECTION 4.** For the purposes of this ordinance, "mobilehome park" shall mean a mobilehome park as defined in Civil Code § 798.3(a). The phrase "conversion of a mobilehome park to resident ownership" shall mean a subdivision of a mobilehome park pursuant to Gov. Code § 66427.5.

**SECTION 5.** During the period this ordinance remains in effect, the provisions of this ordinance shall govern. If there is any conflict between the provisions of this ordinance and any provision of the EPAMC or any City ordinance, resolution, or policy, the provisions of this ordinance shall control.

**SECTION 6.** Environmental Determination. This ordinance is exempt from the California Environmental Quality Act ("CEQA") pursuant to State CEQA Guidelines § 15061(b)(3) and § 15262 in that it can be seen with certainty that there is no possibility that this ordinance or its implementation would have a significant effect on the environment. The Planning Manager is directed to file a notice of exemption in accordance with CEQA and the State CEQA Guidelines.

**SECTION 7.** Severability. If any section, subsection, sentence, clause or phrase of this ordinance is for any reason held to be unconstitutional and invalid, such decision shall not affect the validity of the remaining portion of this ordinance. The City Council hereby declares that it would have passed this ordinance and every section, subsection, sentence, clause or phrase thereof, irrespective of the fact that any one or more sections, subsections, sentences, clauses or phrases be declared unconstitutional or invalid.

**SECTION 8.** Effective Date. This ordinance is an ordinance for the immediate preservation of the public health, safety and welfare and is hereby declared to be in full force and effect from April 27, 2007 to and including July 27, 2007 unless the terms and time period of this ordinance are terminated or extended by the City Council in accordance with Gov. Code § 68585.

\* \* \*

**PASSED AND ADOPTED** by the City Council of the City of East Palo Alto this 24th day of April, 2007 by the following vote:

AYES: Woods, Foster, Rutherford, Abrica
NOES: Evans
ABSTAIN: 0
ABSENT: 0

David Woods, Mayor

ATTEST:

Deputy City Clerk

APPROVED AS TO FORM:

City Attorney

EXHIBIT D

**EXHIBIT  B**

**SUMMONS**
*(CITACION JUDICIAL)*

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CITY OF EAST PALO ALTO, a municipal corporation; DOES
1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
PALO MOBILE ESTATES ASSOCIATES, a California limited
partnership

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ENDORSED FILED**
SAN MATEO COUNTY

JUN 1 2 2007

Clerk of the Superior Court
By  A. De Leon
DEPUTY CLERK

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you.  Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>San Mateo Superior Court<br>400 County Center<br>Redwood City, California   94063 | CASE NUMBER:<br>*(Número del Caso):*  CIV 4 6 3 6 8 6 |

Southern Branch

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Thomas W. Casparian                           310.393.4000     310.394.470-fax
Gilchrist & Rutter
1299 Ocean Avenue, Suite 900
Santa Monica, California 90401                A. De LEON

| DATE:<br>*(Fecha)*  JUN 1 2 2007 | JOHN C. FITTON | Clerk, by<br>*(Secretario)* | A. De Leon | Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* City of East Palo Alto

under: ☐ CCP 416.10 (corporation)              ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☒ other *(specify):* CCP 416.50 (public entity)
4. ☐ by personal delivery on *(date):*

CITY OF EAST PALO ALTO CITY COUNCIL OFFICE
2007 JUN 13 A 11: 55
RECEIVED

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

Page 1 of 1